UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**ROBIN MERRICKS,**                 )
                                    )
      **Plaintiff,**       )
                                    )
      v.                  )    Civil Action No. 11-10956-DJC
                                    )
**SAVERS, INC.,**                   )
                                    )
      **Defendant.**       )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                            January 6, 2012

### I.    Introduction

Plaintiff Robin Merricks ("Merricks") brings this action against her former employer, Savers, Inc. ("Savers") asserting claims of promissory estoppel, breach of contract and violation of Mass. Gen. Laws c. 151B in connection with the termination of her employment. Savers has now moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons discussed below, Savers' motion to dismiss is GRANTED in part and DENIED in part.

### II.    Burden of Proof and Standard of Review

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)). As the First Circuit has made clear, "[i]n resolving a motion to dismiss, a court should employ a two-pronged approach." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (applying Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) and Twombly, 550

1

U.S. at 555). "It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[]' or '[t]hreadbare recitals of the elements of a cause of action.'" Id. (quoting Iqbal, 129 S.Ct. at 1949-50 (further citation omitted)). The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible" and assessed to determine whether they, "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S.Ct. at 1949, 1951). If they do, "the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. (quoting Sepúlveda-Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.)).

### III. Factual Background

On December 23, 2008, Merricks applied for and was offered a position as an Assistant Operations Supervisor ("AOS") at a Savers store located in Plymouth, Massachusetts. (Compl. ¶ 3).[1] Prior to accepting this offer, Merricks met with Store Manager Geri Amaral and Operations Supervisor Eric Melancon. (Compl. ¶ 4). During this meeting, Merricks indicated that she was interested in the AOS position, but that she needed two and a half weeks off in May to attend her son's out-of-state high school graduation and to help him move back home. (Compl. ¶ 5). Merricks alleges that Amaral and Melancon assured her that "this would not be a problem," but also informed her that she would not be paid for such leave. (Compl. ¶ 6). On January 5, 2009, Merricks

---

[1] For the purposes of this Memorandum and Order, the parties' filings are abbreviated as follows: Merricks' verified complaint ("Compl."); Savers' memorandum of law in support of its motion to dismiss ("Def. Memo"); Merricks' opposition to Savers' motion to dismiss ("Pl. Opp."); docket ("D."); and transcript of the October 5, 2011 hearing ("Tr.").

commenced her employment at the Savers store in Plymouth. (Compl. ¶ 8). From this date until April 17, 2009, Merricks worked all of her scheduled shifts. (Compl. ¶¶ 8-11).

Over three months later, on April 17, 2009, Merricks became ill at work. (Compl. ¶ 10). Savers' district manager suggested that Merricks leave and visit her doctor. (Compl. ¶ 11). Merricks was subsequently diagnosed with a severe sinus infection and mononucleosis and was instructed not to return to work until April 23, 2009. (Compl. ¶ 12). Merricks immediately informed Amaral of her illness and that she would not be able to return to work until April 23, 2009. (Compl. ¶¶ 13-14). Savers scheduled Merrick's return for April 25, 2009. (Compl. ¶ 15).

Upon her return to work on April 25, 2009, Merricks worked her full schedule. (Compl. ¶ 16). She continued to work her full schedule until May 5, 2009, at which time Merricks alleges she was scheduled to take her "pre-approved" leave from May 6, 2009 to May 26, 2009 to attend her son's graduation. (Compl. ¶¶ 16-17). When asked by Amaral to return to work on May 25 instead of May 26, 2009, Merricks agreed to do so. (Compl. ¶¶ 18-19). Prior to leaving on May 5, 2009, Amaral asked Merricks to complete a leave of absence form. (Compl. ¶ 20). Merricks claims that Amaral had never previously indicated that there may be a problem with her leave. (Compl. ¶ 21).

While on leave, on May 15, 2009, Merricks contacted Amaral to inquire about her direct deposit paycheck that had not been deposited in her bank account. (Compl. ¶ 22). Amaral responded that her leave of absence had not been approved and that Merricks had been terminated because she took an unapproved leave of absence. (Compl. ¶ 23). Amaral further stated that she would mail a paper copy of Merricks' final pay check to her. (Compl. ¶ 24). One week later, on May 22, 2009, Merricks called the Savers store in Plymouth and spoke to Melancon. (Compl. ¶ 25). Melancon told Merricks that he was unsure why there was a problem. (Compl. ¶ 26). Merricks

3

alleges that Melancon presumed that her time off in April, while recovering from illness, had caused her to miss too many days from work, thus resulting in her termination. (Compl. ¶ 27).

**IV.     Procedural History**

On April 11, 2011, Merricks filed a verified complaint in Plymouth Superior Court, asserting claims of promissory estoppel (Count I), handicap discrimination in violation of Mass. Gen. L. c. 151B (Count II) and breach of contract (Count III). (D. 5). Savers subsequently removed this action to this Court. (D.1). Savers has now moved to dismiss the complaint pursuant to Rule 12(b)(6) and the Court has heard oral argument on the motion.

**V.      Discussion**

    **A.     Count I:   Promissory Estoppel**

At base, Merricks alleges that she relied to her detriment on Amaral and Melancon's representation regarding her ability to take a leave of absence in May of 2009. To establish a promissory estoppel claim, a plaintiff must show that "(1) [defendant] ma[de] a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only be enforcement of the promise." Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (quoting Loranger Const. Corp. v. E.F. Hauserman Co., 6 Mass. App. Ct. 152, 154 (1978)). A promise is a "'manifestation of an intention to act or refrain from acting in a specified way, so as to justify a promisee in understanding that a commitment has been made.'" Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 849-50 (1995) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2 (1981)). "[A]n essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made

4

reasonably relied on the representation." Id. at 848 (internal citations and quotation marks omitted). "Courts typically invoke the doctrine of promissory estoppel when the formal requirements of contract formation are absent and when enforcing the promise would serve the interests of justice." Steinke v. Sungard Fin. Sys., Inc., 121 F.3d 763, 776 (1st Cir. 1997); see also Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 353 (D. Mass. 2011) (noting that promissory estoppel is "usually asserted as an alternative theory of recovery for a contract that is not supported by consideration"); Durmic v. J.P. Morgan Chase Bank, NA, 2010 WL 4825632, at *5 (D. Mass. Nov. 24, 2010) (same).

Viewing the complaint in the light most favorable to Merricks, the complaint sufficiently alleges that Savers promised Merricks that she would be able to take a leave of absence in May. The complaint alleges that Savers (through Amaral and Melancon) told Merricks that if she accepted employment with them, taking a two-and-a-half week leave in May to attend her son's graduation and move him back home "would not be a problem." (Compl. ¶ 6). Savers argues that Merricks' promissory estoppel claim must fail because if any promise was made by Amaral and Melancon, it was not an unambiguous promise. (Def. Memo 5-6). The fact that the complaint does not allege that the specific dates of her May leave were discussed does not render the promise ambiguous. Contract law does not "require[] that all terms of [an] agreement be precisely specified, and the presence of . . . unspecified terms will not necessarily preclude the formation of a binding contract." Situation Mgmt. Sys. v. Malouf, Inc., 430 Mass. 875, 878 (2000). The same principle applies here. The complaint alleges that during her conversation with Amaral and Melancon, Merricks identified the length of time for the leave, the month in which she would take that leave and the reason for the leave. It is reasonable to infer that the promise that the leave under such terms would not be a problem contained sufficient essential terms so as not to be ambiguous.

5

Under these circumstances, the complaint alleges sufficient facts making it at least plausible that Merricks' reliance on this purported promise was reasonable. Merricks alleges that at the outset of her interview with Amaral and Melancon, she raised her concern about being able to take a leave of absence in May. Amaral and Melancon, both alleged to be in a position of authority to extend to Merricks an offer of employment at the time, told her that it would not be a problem. Although the phrase that taking leave "would not be a problem" could have numerous meanings in this context, Merricks alleges that it meant if she became a Savers employee, she would be able to take a leave of absence without being terminated. What was precisely said during Merricks' interview and what Amaral and Melancon actually meant by those words is a matter of fact left for discovery, see Frederick v. ConAgra, Inc., 713 F. Supp. 41, 45-46 (D. Mass. 1989) (denying summary judgment where disputed questions of material fact included the exact terms of the employment agreement and the representations actually made during negotiations for employment upon which plaintiff claims he reasonably relied to his detriment in leaving his previous job to be employed and later terminated by defendant), but the facts as alleged in the complaint are sufficient for the purposes of pleading a plausible promissory estoppel claim.

Defendants argue that in light of Merricks' allegation that she was an at-will employee (Compl. ¶¶ 60, 62), Merricks' reliance on this promise was unreasonable since at-will employees can be "terminated at any time for any reason or for no reason at all" unless the "at-will employee is terminated for a reason that violates a clearly established public policy." Upton v. JWP Businessland, 425 Mass. 756, 757 (1997) (citing cases); see Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 8 (1st Cir. 2011). Despite Savers' argument to the contrary, the fact that Merricks was an at-will employee does not defeat her promissory estoppel claim at this stage. See, e.g., Masso v. United

6

Parcel Serv. of Am., Inc., 884 F. Supp. 610, 619 (D. Mass. 1995) (denying motion to dismiss as to plaintiff's promissory estoppel claim where although he was an at-will employee, plaintiff reasonably relied on an implied promise that employer would not terminate him for engaging in conduct instructed by supervisors). The factual allegations in the complaint, taken as true, sufficiently allege that Merricks received a promise from Savers that she could take a leave of absence in May if Savers hired her and that when she took such leave as an employee, she could do so without being terminated.

The circumstances of this case stand in stark contrast to those in Fitzgerald v. Queen Anne Nursing Home, Inc., 61 Mass. App. Ct. 1103 (2004) (Table), upon which Defendants primarily rely for their argument that Merricks' reliance here was unreasonable. There, the Massachusetts Appeals Court ruled on the defendant's appeal from a jury verdict for the plaintiff on her promissory estoppel claim that she, an at-will employee, was not entitled to judgment where she was terminated after taking a leave of absence authorized by her supervisor. Id. In reversing the judgment, the Court found that the evidence did not support the plaintiff's claim that she had reasonably relied on an unambiguous promise by her supervisor in a contractual sense to support her claim. Id. The Court explained that even though the plaintiff's supervisor encouraged her to take a leave of absence, those conversations did not "create a contractual commitment between the parties" so far as to "convert[ ] the plaintiff's employment to something other than 'at will.'" Id. However, unlike Fitzgerald, the agreement Merricks alleges she made with Savers occurred in the context of pre-employment discussions with Amaral and Melancon, not post-employment promises regarding a leave of absence. Merricks alleges that but for Amaral and Melancon's promise during that conversation that she could take her leave in May, she would not have accepted employment at Savers. It is certainly

7

plausible, based on the facts alleged in the complaint, that Merricks reasonably relied on the representation made to her during her interview that if she accepted the position, she could take such leave.

The complaint also sufficiently alleges that Merricks relied upon Savers' promise to her detriment. Merricks alleges that she ceased her job search to accept employment with Savers, a job she only further pursued because of Savers' promise that she would be able to take a leave of absence in May. But for Savers' promise, Merricks alleges she would have sought employment elsewhere, but instead accepted employment with Savers, took her pre-approved leave and was terminated when she did so. See Grant v. John Hancock Mutual Life Ins. Co., 183 F. Supp. 2d 344, 370 (D. Mass. 2002) (denying summary judgment as to plaintiff's promissory estoppel claim where a triable issue existed regarding whether the employee's reliance was reasonable where he ceased his job search and moved to take a position with defendant company based on the representations made to him about his job responsibilities).

Accordingly, because the factual allegations in the complaint are sufficient to state a plausible promissory estoppel claim, Savers' motion to dismiss Count I is DENIED.

### B. Count III: Breach of Contract

To state a claim for breach of contract, a plaintiff must show "(1) that the parties reached a valid and binding agreement . . . (2) that [defendant] breached the terms of [that agreement] . . . and (3) that [plaintiff] suffered damages as a result [of] the breach." Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995). The essential elements of a contract are an offer, acceptance, and an exchange of consideration or meeting of the minds. Vadnais v. NSK Steering Sys. Am., Inc., 675 F.Supp.2d 205, 207 (D. Mass. 2009) (citing Quinn v. State Ethics Comm'n, 401 Mass. 210, 216

(1987)).

Even accepting the allegations in the complaint as true, Merricks has failed to state a plausible breach of contract claim. Read in the light most favorable to Merricks, the breach of contract claim is based on the agreement she alleges she made with Amaral and Melancon at her interview. Although Merricks presses this separate breach of contract claim, the allegations in support of this claim are framed in the context of her detrimental reliance upon Savers' alleged promised that she could take (unpaid) leave in May. (Compl. ¶¶ 51-66). These allegations mirror the allegations made in support of her promissory estoppel claim (Count I). Compare Compl. ¶¶ 1-32 with Compl. ¶¶ 51-66. However, as discussed above, asserting a separate breach of contract claim requires alleging the essential element of consideration. "A contract must have consideration to be enforceable and in order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." Neuhoff v. Marvin Lumber and Cedar Co., 370 F.3d 197, 201 (1st Cir.2004) (internal quotation marks omitted). Merricks makes no allegation of consideration or "meeting of the minds" between the parties in her complaint.

Even if the complaint alleged consideration for Merricks' alleged contract with her employer, because Merricks alleges she became an at will employee, Savers could have terminated that employment agreement for any reason at any time. See Upton, 425 Mass. at 757. It is well-settled in Massachusetts, subject to limited exceptions for violations of public policy or to prevent unjust enrichment to an employer, that an at-will employee cannot succeed on a breach of contract claim arising from a change in the terms and conditions of her employment. See, e.g., Bergeson v. Franchi, 783 F. Supp. 713, 717-18 (D. Mass. 1992) (holding that at-will employee's breach of

contract claim fails because, absent showing of bad faith or violation of public policy, an at-will relationship is terminable at any time for any reason). At oral argument, counsel for Merricks argued that the exception for breach of the covenant of good faith and fair dealing applies here, claiming that Savers breached the covenant of good faith and fair dealing when they agreed to allow Merricks to take a leave of absence and then terminated her for taking such leave. Although the Supreme Judicial Court has recognized an implied covenant of good faith and fair dealing in every employment relationship, including some at-will relationships, it has limited this exception "to cases in which an employer fires an employee and thereby deprives him or her of bonuses, commissions, or wages." Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 477 n. 1 (1992). Liability is only imposed under this exception "where employers would unjustly benefit financially by depriving the employees of future compensation earned for past services." Bergeson, 783 F. Supp. at 717 (citing cases). The loss of income for future services is not bound by the good faith duty. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 672 (1981) (noting the "distinction between the loss of future wages for past service . . . and the loss of future income for future services") (citing cases). Because Merricks has not alleged nor argued the loss of wages or commissions for past services, this exception does not apply.

The second exception may subject an employer to liability when an employee's termination violates a clearly established public policy. Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416 (1988); DeRose v. Putnam Mgmt. Co., Inc., 398 Mass. 205, 210 (1986). Like the exception for preventing unjust enrichment to an employer, the public policy exception applies only in limited instances. A remedy is available under the public policy exception for at-will employees "who are terminated for asserting a legally guaranteed right (e.g. filing workers compensation claims), for

doing what the law requires (e.g. serving on a jury), or for refusing to do that which the law forbids (e.g. committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989). "Courts are hesitant, however, to create a new cause of action, only doing so when there is no other way to vindicate such public policy." Bergeson, 783 F. Supp. at 717 (internal quotation marks and citation omitted).

At oral argument, Merricks argued that this public policy exception applies because Savers made "a material misrepresentation about the nature of employment at a point in time when [Merricks was] truly in a vulnerable position because they're getting all the information they can have about this job," Tr. 19: 19-25, relying on Pitney v. Table Talk Pies, Inc., 2004 WL 3313445, at *3 (Mass. Super. Ct. Mar. 22, 2005). In Pitney, the employer represented to the plaintiff during his interview that the position at the company would be a managerial position. Id. at *1. After leaving his current employer and accepting the new position, the plaintiff realized after a couple of months on the job that he was not given the duties that corresponded with the managerial position for which he thought he was hired. Id. In denying the employer's motion for summary judgment on plaintiff's promissory estoppel claim, the Court found that the plaintiff had stated a valid breach of contract claim (despite no separate breach of contract claim asserted in the complaint), stating that, "it is certainly a violation of public policy for an employer to induce an employee to give up a job and take a new position on the basis of material misrepresentations about the nature of the position for which the employee is hired." Id. at *3. Although Pitney does not necessarily appear to accurately reflect the Supreme Judicial Court's stringent standard in applying the public policy exception in at-will employment cases, see, e.g., Smith-Pfeffer, 404 Mass. 149-50; Upton, 425 Mass. at 759-60, Pitney is nonetheless distinguishable from the instant case. Here, the complaint does not

allege that Savers misrepresented the "nature" of Merricks' position, a fact at the heart of the Pitney decision. Merricks neither alleges nor argues that the position for which she applied, was interviewed and accepted was different than the one she assumed during her employment. It cannot be said that, as alleged, Savers' actions rise to the level of a violation of an important public policy as contemplated by the Supreme Judicial Court.

Because Merricks is an at-will employee and she does not allege she falls within the few limited exceptions to the at-will doctrine, she has failed to state a plausible breach of contract claim. See, e.g., Bergeson, 783 F. Supp. at 717-18; Carroll, 294 F.3d at 242 (affirming dismissal of an at-will employee's breach of contract claim "based upon demotion or reduced compensation"). Savers' motion to dismiss as to Count III is therefore GRANTED.[2]

### C. Count II: Violation of Mass. Gen. L. c. 151B

Count II alleges handicap discrimination under Mass. Gen. L. c. 151B. "Chapter 151B is considered the 'Massachusetts analogue' to the federal Americans with Disabilities Act ('ADA')." Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 153 (1st Cir. 2009) (internal quotation marks and citation omitted). "Claims of handicap discrimination, including a perception of ('regarded as') impairment, proceed under the well-settled three-stage order of proof." City of New Bedford v. MCAD, 440 Mass. 450, 461 (2003). To establish a prima facie case of unlawful employment discrimination on the basis of a handicap, a plaintiff must demonstrate that she was:

---

[2]The dismissal of Count III (breach of contract) but the survival of Count I (promissory estoppel), however, does not answer the question of the appropriate measure of recovery if Merricks prevails. "[W]hen a promise is enforceable due to reliance [as alleged in Count I], the promise becomes a contract enforceable pursuant to traditional contract theory, . . . except as to recovery. . . . Thus, while the plaintiff may be entitled to a range of damages from full contract damages to reliance or restitution damages, . . . the recovery appropriately may be limited as justice requires." Masso, 884 F. Supp. at 619 (internal quotation marks and citations omitted).

12

"(1) handicapped; (2) capable of performing the essential functions of the job with reasonable accommodation; and (3) subject to an adverse action by his employer; and (4) the position he had occupied remained open and the employer sought to fill it." Id. at 461-62 (quoting Mass. Gen. L. c. 151B. § 4(16)) (internal quotation marks omitted).[3]

Massachusetts courts employ a three-step analysis to determine whether a plaintiff has demonstrated that she is "regarded as" handicapped within the meaning of c. 151B: (1) whether the plaintiff's condition, actual or perceived, constitutes a mental or physical impairment; (2) whether the life activity curtailed constitutes a major life activity; and (3) whether the impairment substantially limited the major life activity. Id. at 463 (citing cases); see Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999) (noting that "a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities"). It is insufficient for a plaintiff claiming c. 151B protection "to merely submit evidence of a medical diagnosis of an impairment" to establish that she is handicapped within the meaning of the statute; rather, a plaintiff must offer evidence that "the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." Id. at 463 (quoting Carroll, 294 F.3d at 238) (further citation omitted).

Here, the complaint alleges that Merricks was "regarded as" being "handicapped" due to

---

[3]Mass. Gen. L. c. 151B, § 4(16), provides that it is unlawful for an employer "to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation."

13

a "sever[e] sinus infection and mononucleosis." Compl. ¶¶ 37, 39, 44, 47, 48. The ADA, 42 U.S.C. § 12101 et seq., provides that an employee is "regarded as" disabled if she is subject to a prohibited action based on an impairment that is not "transitory or minor." A "transitory impairment" is defined as "an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Even assuming, without deciding, that a sinus infection could be considered more than the type of "transitory or minor"impairment not protected under c. 151B, see Hallgren v. Integrated Fin. Corp., 42 Mass. App. Ct. 686, 688 (1997), the complaint fails to adequately allege that Savers perceived her to be substantially limited in the major life activity of working due to her alleged handicap.

Under Mass. Gen. L. c. 151B, § 1(20), "major life activities" include "working." An impairment substantially limits an individual's ability to work only "if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes." New Bedford, 440 Mass. at 464-65 (quoting MCAD Guidelines: Employment Discrimination on the Basis of Handicap Chapter 151B, § II.A.6 (1998)). The complaint alleges that Merricks took a short leave (approximately eight days) to recover from a sinus infection and mononucleosis, (Compl. ¶¶ 10-16), and appears to base her claim that Savers regarded her as handicap on the allegation that Savers waited until April 25 to schedule her return to work, rather than scheduling her return for April 23. (Compl. ¶¶ 44-45, 48). However, it would be unreasonable to infer that Savers regarded Merricks as substantially limited in the major life activity of working simply because Savers scheduled her return to work two days after Merricks alleges she could have returned in light of the complaint's allegations that when Merricks returned on April 25, she resumed her normal duties as an AOS and "worked a full schedule until May 5, 2009." Compl. ¶ 16. Merricks

missed only eight days of work due to her sinus infection and does not allege any difficulties while performing her job at Savers after she returned to work and resumed her full work schedule. The complaint fails to allege any other facts supporting Merricks' conclusory allegation that her supervisors or anyone at Savers regarded her as substantially limited in her ability to perform a broad range or class of jobs or her ability to perform her job as an AOS. Because Merricks has failed to allege that she was regarded as handicapped within the meaning of c. 151B, she cannot state a plausible claim of handicap discrimination under c. 151B. Savers' motion to dismiss Count II is therefore GRANTED.

**VI.    Conclusion**

For the foregoing reasons, Savers' motion to dismiss is GRANTED as to Counts II and III and DENIED as to Count I.

**So ordered.**

/s/ Denise J. Casper
United States District Judge